**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **DAROLD ADAMI** | § | |
| | § | |
| **V.** | § | **4:17-CV-574-ALM** |
| | § | |
| **SAFECO INSURANCE** | § | |
| **COMPANY OF INDIANA** | § | |

**DAROLD ADAMI'S SECOND AMENDED COMPLAINT**

Plaintiff, Darold Adami, files this Second Amended Complaint against and complaining of and about Safeco Insurance Company of Indiana, Defendant, and alleges as follows:

## I.    STATEMENT OF THE CASE

1.    This case was removed from State Court when Plaintiff was seeking monetary relief aggregating $100,000 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees, and appropriate injunctive relief against Defendant's failure to comply with Texas Insurance Code and Texas Deceptive Trade Practice Acts provisions.

## II.    PARTIES

2.    Plaintiff, Darold Adami, is an individual who resides in Sherman, Grayson County, Texas.

3.    Defendant Safeco Insurance Company of Indiana was served in State Court before this case was removed to Federal Court.

4.    Plaintiff seeks monetary relief of $100,000 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees, and appropriate injunctive relief against Defendant's failure to comply with Texas Insurance Code and Texas Deceptive Trade Practice Acts provisions.

5.    This court has jurisdiction over this matter after removal from State Court. All or a

majority of the acts described below took place in Grayson County, Texas, within the Eastern

District of Texas.

### III.    FACTS

6.      Plaintiff's claims arise from damage relating to the foundation and structure of his home,

resting on that foundation at 1507 Crescent Drive, Sherman, Texas 75092 ("Adami Home").

7.      Plaintiff's home has been covered at all material times by an insurance policy issued,

sold, and maintained by Defendant, Safeco.  Under that policy and applicable Texas statute and

regulation, Defendant Safeco admitted to Plaintiff without equivocation that Plaintiff's claim was

covered under the policy.  Safeco, under that policy, has consistently been obligated to Plaintiff

to abide by the terms of that policy and Texas law.  Pursuant to those protections, Plaintiff made

and has been pursuing his claim with Safeco since November 15, 2016.

8.      Mr. Jordan Wilson, Safeco's authorized claim adjuster, has personally had notice of the

claim since November 17, 2016.  Mr. Adami has been working to try to get Safeco to reimburse

him for expenses he would incur and now has incurred because of the Adami Home foundation

and related damages suffered from the loss Safeco has admitted to be covered.  The amount

Safeco shorted Plaintiff is at least $14,000[1] out of the $25,000 stated coverage under a

foundation damage addendum.[2]

9.      Safeco is claiming that only a portion of Plaintiff's damages are covered.

  **A.   Mr. Adami noticed standing water outside, began investigating what caused the
         water, found the source of the water leak, and made all necessary repairs to stop the
         leak.**

10.     In September 2016, Mr. Adami and his wife Patti Adami, a stage four cancer patient,

---

[1] There may be more, given that Safeco has applied a deductible and other reductions reflected in the
check tendered to Plaintiff.
[2] The Court may determine that other coverage exists; no waiver of that coverage is intended here by
focusing on the policy addendum.

noticed standing water adjacent to the northeast corner/back right of the Adami Home where the master bedroom is located.

11.     After noticing the standing water, Mr. Adami checked and found a hairline crack in their swimming pool.  Mr. Adami did not delay in getting the crack repaired.

12.     After the hairline pool crack was resolved the pool company performed a "bucket test" and confirmed that the pool was not leaking and it was not the source for the moisture Mr. Adami had previously noticed.

13.     Mr. Adami then contacted a landscape company to check his irrigation line for leaks. The landscape company found a leak and/or bust in the sprinkler line adjacent to the northeast corner of the Adami Home. This irrigation line was quickly repaired in or about October 2016.

14.     Mr. Adami noticed the standing water, was able to find the source of the moisture, and got it repaired within six (6) weeks – while caring for his wife and her deteriorating health.

**B.  Mr. Adami informed Safeco about his covered loss.**

15.     On or about November 15, 2016 Mr. Adami reported a heaved foundation and related damage evidently arising from the water coming from the failed sprinkler system.

16.     On or about November 17, 2016, Defendant assigned Plaintiff's claim to Safeco Adjuster Mr. Jordan Wilson. On the same day Mr. Adami's wife of 56 years, having battled cancer for seven (7) years, became gravely ill and was admitted to the hospital. Two days later, on November 19, 2016, Mr. Adami's wife passed away.[3]

17.     On or about November 29, 2016, a Safeco agent which Safeco identified as American Leak Detection, performed a pressure test to insure there were no other leaks affecting the foundation. None were reported.

---

[3] This entire ordeal has been extremely distressing and personal as it relates to "their bedroom" and the surrounding area of their home.

18.     On or about December 15, 2016 Mr. Wilson had a "Safeco Engineer" from Nelson

Engineering come to the Adami Home and evaluate the damage and render a report on damages

covered by the Safeco policy. The Safeco Engineer prepared a report outlining her findings, a

copy of which is attached hereto as Exhibit "A".

19.     On or about January 3, 2017 Nelson Engineering rendered their report to Safeco.

Defendant then provided a copy to Mr. Adami.

20.     Mr. Adami pointed out a serious defect in the engineering report: that it failed to identify

or include the heaved foundation evidently caused by the water leak and needing to be repaired.

It seemed obvious since, without the heaved foundation, there might be no cause for the interior

and exterior damage to the Adami Home, in the effected area.

21.     After this mistake was brought to Mr. Wilson's attention, he informed Mr. Adami that he

would call and talk to the Safeco engineer about this.[4]

22.     After Mr. Adami was sent the report, Mr. Wilson informed Mr. Adami that he would

prepare a damage report for the cost of making the repairs for damage to the Adami Home. The

estimated cost of repairs originally did not include foundation repairs. So later, on or about

March 7, 2017, Safeco sent Mr. Adami a letter stating that they had "completed the supplemental

estimate" for a Net Claim amount of $8,698.45. The estimated cost of covered repairs is attached

hereto as Exhibit "B".

23.     As Exhibit "B" reflects, the estimated cost of covered repairs was limited to the master

bedroom area, which Defendant claimed to be the "zone of influence" described in the engineer

report. See Exhibit "A", p. 18.

---

[4] Several days later Mr. Wilson called Mr. Adami and informed him that the engineer agreed that the
heaved foundation needed repairing and asked Mr. Adami to get bids for the foundation and interior
repair.

24.     Following this limitation of coverage by Safeco, Mr. Adami contacted Mr. Wilson stating

that he disagreed that the interior and exterior home damage were confined to the "zone of

influence."  Mr. Adami further stated that he and his wife, prior to her death, had identified

major cracks and misaligned doors and windows that had not existed prior to the sprinkler line

break leak.

### C.  Safeco informed Mr. Adami that coverage is limited to the "zone of influence" per the Engineering Report.

25.     According to a May 9, 2017 letter from Safeco, see Exhibit "C", the only "damages

caused by the leak were only those present in, and around the exterior perimeter of, Mr. Adami's

master bedroom or the zone of influence."

26.     However, the term "zone of influence" is not found or defined in the pertinent Safeco

insurance policy. When asked to define "zone of influence", Safeco said it was a term essentially

defined by the engineer it had hired.

27.     Safeco has refused to provide Plaintiff with all the documents necessary to determine

Safeco's denial of Plaintiff's claims. Plaintiff has not been given the information, if any, relied

upon when calculating the made-up term "zone of influence".

28.     Despite months of requests for information, Defendant has provided Plaintiff no basis for

the use of  "zone of influence" or damages calculated within that zone. This "zone of influence"

is a non-contractual term used by Defendant to deny contractual benefits.

### D.  None of the options Mr. Adami was presented would restore the Adami Home to its "pre-loss condition."

29.     Mr. Adami contacted four foundation companies, including one recommended by Mr.

Wilson, the only company not to return Mr. Adami's call.

30.     Of the three foundation companies which did respond, all provided requested information

and all agreed that whatever their recommended approach, it would be extremely costly to get the Adami Home's foundation back to its pre-loss condition. Further, despite the options to correct the foundation, none would guarantee that their proposed solutions would return the Adami Home's foundation to its pre-loss condition.[5]

### E.  Mr. Adami chose the best cost effective solution.

31.     Mr. Adami was presented with a few estimates but one company suggested a combined approach with piers and injecting foam, which appeared cost effective. This technique had reportedly proved successful in similar situations, and thus approved by Mr. Adami.

32.     Mr. Adami advised Safeco that the repair options would likely increase as more piers or injections were found to be needed and/or potential additional damage which could be incurred during the repair process. As the total cost estimate was already in excess of the policy limit, Mr. Adami indicated that he was willing to pay these additional costs, to achieve what appeared to be the best solution to avoid later damages from natural movement of the foundation.

33.     The foundation repair quote was presented to Safeco, which denied the approach since part of the solution extended beyond Safeco's deemed "zone of influence." Safeco claimed that in areas of the home reflected that contained pre-existing settling which would not be covered under the policy.

34.     Mr. Adami made several attempts to get Safeco to understand that, while the damage extended beyond the "zone of influence", by not repairing past this, additional damages would be caused. The result of which would cause the Adami Home to be even further away from being

---

[5] The foundation companies further informed Mr. Adami that by "digging and piering" the heaved foundation and attempting to get it to "fall" to its pre-loss condition, that then this section of the home would no longer "float" with the rest of the Adami Home. Thus, any further movement by the Adami Home would be exacerbate damage to the middle interior of the Adami Home when natural movement occurred.

restored to its pre-loss condition. In fact, the solution Mr. Adami utilized was not only the cost effective solution, but it also mitigated further possible damages.

35.     Safeco identified the piers it would pay for. Had Mr. Adami proceeded as Safeco sought to direct, the damages to the Adami Home predictably would have been made worse.

36.     Frustrated with Safeco's refusal to fund the cost effective process most likely to restore the Adami Home closest to its pre-loss condition, Mr. Adami invited Safeco, through its adjuster Mr. Wilson, to come to his home and meet with an engineer from the company hired to fix the Adami Home. Safeco refused.

37.     As of this filing, Safeco has refused to provide Mr. Adami with a proposed plan that would have put the Adami Home back in its pre-loss condition or even provide an alternative "fix" where repairs in the "zone of influence" resolved the massive upheaval issue.

**F. Mr. Adami attempted to settle prior to filing suit.**

38.     Mr. Adami has attempted through many communications to try to resolve the matter with Safeco. Safeco refuses. A copy of the pre-suit demand letter is attached hereto as Exhibit "D."

39.     No Safeco efforts to explain the method used in determining its "zone of influence" have been provided to Mr. Adami. For his part, Mr. Adami sought to play a constructive role and explained why he disagreed with the "zone of influence" limitation, suggesting core soil testing be done to determine how much moisture remains in the soil. As the costs were already going to be in excess of the policy, this should have been agreeable. Instead Mr. Wilson responded inaccurately more than forty-eight (48) hours later that "[s]oil samples were taken by the engineer that visited your home as well as elevation measurements." This was not true. The Safeco Engineer Report states that "[a] limited review of soils for this area was performed using the Web Soil Survey….[t]his information is provided for general assessment of the subject

property's soils and should not be construed as site-specific soils information."

40.     Mr. Wilson either was negligent in following up on Mr. Adami's claims, or deliberately sought to mislead a grieving seventy (70) year old man trying to put his life and home back together.

### IV.     BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

41.     Defendant breached its duty of good faith and fair dealing when it failed to pay Claim Number 231505146002 in accordance with the terms of the insurance policy, which are reasonably clear.

42.     Despite the fact that there was no basis whatsoever upon which a reasonable insurance company would have relied upon to deny payment of the full claim, Safeco did so. Specifically, Defendant evidently used an arbitrary method to construct a fanciful "zone of influence" standard not provided for in the policy. Safeco sent an inexperienced claims adjuster to determine the undefined "zone of influence." In fact, the claims adjuster's engineer also did not have the skill set necessary to determine the extent of damage and what needed to be done to restore the Adami Home to its pre-loss condition. Evidently the adjuster and his engineer decided not to address repairing of the foundation in the engineer's original report perhaps because restoring the foundation was the most costly of the needed repairs.

43.     The basis for the denial of Plaintiff's claim is bad faith. Safeco knew or should have known by the exercise of reasonable diligence, that its liability was reasonably clear.

44.     A bad faith claim arises in two instances: (1) when an insurer unreasonably denies an insured's claim; or (2) when an insurer is obligated to pay proceeds on an insured's claim and it is dilatory in paying. *Martinka v. Commonwealth Land Title Co.,* 836 S.W.2d 773, 776 (Tex.App.—Houston[1st] 1992, writ denied)

45.     Safeco breached its duty to deal fairly and in good faith with Plaintiff.

## V.     TEXAS DECEPTIVE TRADE PRACTICES AND TEXAS INSURANCE CODE

46.     Plaintiff is a consumer under the DTPA because Plaintiff is an individual who acquired services, Safeco insurance coverage, by purchase.

47.     Defendant is a company that can be sued under the DTPA.

48.     Defendants violated at least Section 17.46(b) of the Texas Business and Commerce Code, in that Defendant failed to fairly consider, evaluate, and investigate the loss in question, short-changing Plaintiff in a way which is actionable under the Texas Deceptive Trade Practices - Consumer Protection Act.

49.     Plaintiff gave Defendant notice as required by Texas Business & Commerce Code, Section 17.505(a), and pursuant to Chapter 541 of the Texas Insurance Code, on April 28, 2017. Attached as Exhibit "D", is a copy of the notice letter sent to Defendant, which is incorporated by reference.

50.     Plaintiff would show that the acts, practices and/or omissions complained of were the producing cause of Plaintiffs damages.

51.     Defendant engaged in false, misleading, or deceptive acts or practices when it denied the full coverage amount to Plaintiff, whose covered damages exceed the policy limits.

52.     Plaintiff would further show the acts, practices and/or omissions complained of under Section 17.46(b) of the Texas Business and Commerce Code were relied upon by Plaintiff to Plaintiffs detriment.

53.     Defendant's decision to deny the full coverage amount to Plaintiff was done at least knowingly and possibly intentionally, which thus entitled Plaintiff to recover mental-anguish damages under the Texas Business & Commerce Code § 17.50(b)(1). Further, Defendant acted

knowingly, thus entitling Plaintiff to recover treble economic damages under Texas Business & Commerce Code § 17.50(b)(1).

54.     If Defendant acted intentionally, Plaintiff is entitled to recover treble economic and mental-anguish damages.

55.     Plaintiff is entitled to recover reasonable and necessary attorney fees for prosecuting this suit under Texas Business & Commerce Code Section 17.50(d).

56.     Additionally or in the alternative, Defendant violated the DTPA when Defendant used or employed an act or practice in violation of Texas Insurance Code Chapter 541. Specifically, Defendant made misrepresentations about the investigation that was done prior to the limiting of coverage for Plaintiff's claim.

57.     Defendant violated the DTPA tie-in statute, Texas Insurance Code §541.060(4)(A). Per the Texas Insurance Code § 541 it is an unlawful and deceptive act to engage in unfair settlement practices with respect to Plaintiff's claim. Safeco did just this, despite failing to explain how the "zone of influence" was calculated and how it relied on this arbitrary standard to limit its payment for Plaintiff's claim. Further, Defendant has failed to provide payment required to restore the property to its pre-loss condition.

58.     Pursuant to the Texas Insurance Code §§541.151-541.152, Plaintiff is entitled to actual damages, court costs, and reasonable attorneys' fees. Additionally, pursuant to Section 38.001 of the Texas Civil Practices and Remedies Code, Plaintiff is entitled to recover reasonable attorneys' fees.

59.     All conditions precedent to the filing of this suit and recovery of additional damages and attorney's fees.

## VI.     AGENCY

60.     At and during the time of the acts and/or omissions complained of herein, any acts and/or omissions committed by an agent, representative or employee of Defendant, occurred within the scope of the actual or apparent authority of such person on behalf of said Defendant.

61.     Said Defendant is therefore liable to Plaintiff for the acts and/or omissions of any such agent, representative or employee complained of herein by virtue of such agency relationship.

## VII.     RESPONDEAT SUPERIOR

62.     At and during the time of the acts and/or omissions complained of herein, said acts and/or omissions of any employee of Defendant occurred within the scope of the general authority and for the accomplishment of the objectives for which such employee was employed.

63.     Defendant is therefore liable to Plaintiff for the acts and/or omissions of any such employee or agent complained of herein under the doctrine of respondeat superior.

## VIII.     ECONOMIC AND ACTUAL DAMAGES

64.     Plaintiff sustained the following economic and actual damages as a result of the actions and/or omissions of Defendant described hereinabove:

(a) Out-of-pocket expenses, including but not limited to $14,000.

(b) Cost of replacement.

(c) Costs of repairs.

(d) Remedial costs and/or costs of completion.

(e) Reasonable and necessary engineering or consulting fees.

(f)  Mental anguish.

## IX.     ATTORNEY'S FEES

65.     Request is made for all costs and reasonable and necessary attorney's fees incurred by or

on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by: (a) Section 17.50(d) of the Texas Business and Commerce Code; (b) Chapter 38 of the Texas Civil Practice and Remedies Code; and, (c) common law.

## X.    CONDITIONS PRECEDENT

66.    All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

## PRAYER

For these reasons, Plaintiff, Darold Adami, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for the economic and actual damages, as requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and post judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pleaded or unpleaded.

Respectfully submitted,

_____/s/  Roger Sanders_____
Roger D. Sanders
State Bar No. 17604700
Roger.sanders@somlaw.net
Laura Gallardo
State Bar No. 24077826
lgallardo@somlaw.net

**Sanders, Motley, Young & Gallardo**
111South Travis Street
Sherman, Texas 75090
(903) 892-9133 – Telephone
(903) 892-4302 – Fax

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

So certified on this 20th day of September, 2017.

_____/s/ Roger Sanders_____
Roger D. Sanders